**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **MARK D. MYERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 16-3267 |
| | ) | |
| **ALLEN F. BENNETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Defendant Judge Allen Bennett's Motion to Dismiss (d/e 9) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's Motion is GRANTED.

## I. BACKGROUND

In September 2016, Plaintiff Mark Myers filed a Complaint against Judge Allen Bennett. (d/e 1). The following facts, except where indicated, come from the Complaint. At this stage in the proceedings, the Court accepts all well-pleaded facts as true. Kubiak v. City of Chi., 810 F.3d 476, 480-81 (7th Cir. 2016).

On September 15, 2015, Matthew Beyers brought suit against Myers under Illinois's Stalking No Contact Order Act[1] in <u>Beyers v. Myers</u>, Shelby County Circuit Court Case No. 15-OP-102 (hereinafter referred to as "state case").[2]  As indicated by public records, the Court entered an emergency stalking no contact order against Myers.  The Complaint does not indicate the restrictions specified by the stalking no contact order.

On September 28, 2015, Myers was served with a Summons for an October 1, 2015, hearing.  Myers appeared at the hearing <u>pro se</u> and Beyers appeared with counsel.  During the hearing, Judge Bennett granted Myers's request for time to obtain an attorney and gave Myers three weeks to respond.  Compl. at 5, ¶ 4.  Judge

---

[1] Illinois's Stalking No Contact Order Act allows circuit courts to issue stalking no contact orders that restrict the defendant's contact with the petitioner, prohibit the defendant from stalking petitioner, and prevent the defendant from being in certain areas, which can include the defendant's own property.  740 ILCS 21/80 (2015).  The court may issue an emergency stalking no contact order based upon the allegations in a filed petition and without the presence of the defendant.  740 ILCS 21/95 (2015).  After the order is issued, the defendant must be served by summons a copy of the petition, the order, and notice of any hearings.  740 ILCS 21/60 (2015).

[2] The Complaint references the state case number and county but does not contain the petitioner's name.  Myers's Response to the Motion to Dismiss indicates the petitioner's name is Beyers (See d/e 13 at 7).  Public records show the name of the petitioner as Matthew T. Beyers and the name of the case as <u>Beyers v. Myers</u>.  The Court takes judicial notice of petitioner's name and the case name.

Bennett also extended the duration of the existing stalking no contact order. The order (at least as of October 1, 2015) restricted Myers's access to Myers's property (consisting of approximately 2.5 acres of real estate), three Shelby County school buildings, and a restaurant located in Shelby County. Compl. at 5, ¶ IV; Plaintiff's Amended Response to the Motion to Dismiss (Response) at 4 (d/e 13). Myers asserts that Judge Bennett based the decision to extend the existing stalking no contact order solely upon Beyers's claims. Following the hearing, an officer escorted Myers from the courtroom. Judge Bennett, Beyers, and Beyers's attorney remained in the courtroom. They engaged in conversation that Myers could not hear.

Sometime following the October 1, 2015, hearing, Myers obtained an attorney. After Myers's attorney requested to take certain depositions, Beyers's attorney moved to dismiss the case. Compl. at 5, ¶ IV. Judge Bennett granted that motion.

On May 10, 2016, Myers requested a copy of the official transcript from the October 1, 2015, hearing. In June 2016, Myers received a copy of the transcript. Myers noted significant discrepancies between the events of the October 1 hearing and the

information reflected in the transcript.  The Complaint does not specify the exact nature of the discrepancies, but Myers's Response states that Judge Bennett deleted the following comment from the transcript: "This is about a land dispute.  You understand that don't you!"  Plaintiff's Response at 9.

Myers objected to the contents of the transcript to the court reporter.  Myers later received a second, modified version of the transcript from the court reporter, which also contained errors similar to the discrepancies found in the first transcript.  The court reporter advised Myers that Myers's concerns had been submitted to a supervisor, that the matter had been turned over to Judge Bennett, and that Judge Bennett controlled an audio tape of the October 1 hearing.

On June 10, 2016, Judge Bennett called Myers.  Myers's attorney did not participate in the phone call.  The phone call lasted ten minutes.  Myers asserts that the purpose of Judge Bennett's call was to "intimidate, threaten, and harass" Myers because of Myers's objections to the court transcript.

On June 10, 2016, Judge Bennett was assigned as the judge on a separate lawsuit against Myers.

Myers asserts that Judge Bennett violated 42 U.S.C. § 1983 by depriving Myers of his First, Fourth, and Fourteenth Amendment rights. Specifically, Myers states that Judge Bennett violated Myers's Fourteenth Amendment rights at the October 1 hearing because, in violation of the Illinois Supreme Court Rules on Civil Proceedings in the Trial Court (Illinois Supreme Court Rules), Judge Bennett proceeded with the hearing when Myers had insufficient time to prepare for the hearing. Myers also contends that Judge Bennett violated Myers's due process rights because the hearing resulted in restrictions to Myers's liberty, freedom of movement, and property rights. Similarly, Myers alleges that Judge Bennett's conversation with Beyers and Beyers's attorney immediately after the October 1 hearing violated Myers's due process rights because Myers was not present for the discussion. Myers further alleges that the June 10, 2016, phone call violated Myers's First Amendment rights, due process rights, and the Illinois Supreme Court Rules because the call took place without Myers's attorney and prevented Myers from redressing his grievances. Myers seeks judgment for compensatory damages, the costs of suit, and punitive damages.

## II. JURISDICTION

The Court has subject matter jurisdiction over this lawsuit under federal question jurisdiction. Under the well-pleaded complaint rule, the federal question forming the basis of the court's jurisdiction must appear in the complaint as part of the plaintiff's claim. Fed. R. Civ. P. 8(a)(1); <u>Louisville & Nashville Railroad Co. v. Mottley</u>, 211 U.S. 149 (1908). Myers brings his suit under 42 U.S.C. § 1983, which establishes a federal civil cause of action for deprivation of rights. Additionally, the Complaint asserts violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution. Therefore, the Complaint establishes the Court's federal question subject matter jurisdiction.

## III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint. <u>Bonnstetter v. City of Chi</u>., 811 F.3d 969, 973 (7th Cir. 2016). A sufficient complaint gives the defendant fair notice of the claims by requiring the plaintiff to provide a short and plain statement of the claims showing the plaintiff is entitled to relief. <u>Arnett v. Webster</u>, 658 F.3d 742, 751 (7th Cir. 2011). Additionally, a properly stated claim must raise its allegations above speculation

and "must actually suggest that the plaintiff has a right to relief."
Id. at 752.  A plausible claim alleges facts from which the court can
reasonably infer that the defendant is liable.  Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009).  Merely repeating the elements of a cause of
action or supporting claims with conclusory statements is
insufficient to state a cause of action.  Id.

However, the standards for pro se complaints are considerably
relaxed.  Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1027
(7th Cir. 2013).  Pro se complaints must be liberally construed and
are held to "a less stringent standard than formal pleadings drafted
by lawyers."  Arnett, 658 F.3d at 751.

A motion to dismiss must be decided based on facts stated in
the complaint.  Miller v. Herman, 600 F.3d 726, 733 (7th Cir. 2010).
When the Court considers a motion to dismiss, all well-pleaded
facts corresponding to the plaintiff's claims are accepted as true
and the court makes "all reasonable inferences in favor of the
plaintiff."  Kubiak, 810 F.3d at 481.

However, a court addressing a motion to dismiss may consider
certain documents beyond the complaint.  First, the court may
consider any exhibits attached to the complaint.  See Fed. R. Civ.

Pro. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); <u>Moranski v. General Motors Corp.</u>, 433 F.3d 537, 539 (7th Cir. 2005) ("Any written instrument attached to the complaint is considered part of the complaint."); <u>Beam v. IPCO Corp.</u>, 838 F.2d 242, 244 (7th Cir. 1988) (exhibits attached to the complaint are incorporated into the pleading for purpose of Rule 12(b) motion).

Second, the Court may consider the plaintiff's response to a motion to dismiss and other statements and materials that are referenced in the complaint and that are essential to the plaintiff's claims. <u>Heng v. Heavner, Beyers & Mihlar, LLC</u>, 849 F.3d 348, 353-54 (7th Cir. 2017) (finding that a court may, when ruling on a motion to dismiss, consider materials or elaborations in a plaintiff's trial brief or response to a motion to dismiss consistent with the pleadings); <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) (finding that a court may consider facts submitted in a <u>pro se</u> plaintiff's brief opposing a motion to dismiss when the facts are consistent with the allegations in the complaint). A plaintiff opposing a Rule 12(b)(6) motion to dismiss "may submit materials outside the pleadings to illustrate the facts the party expects to be

able to prove." Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Finally, the court may consider information that is subject to judicial notice. Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012) (a court may take judicial notice of matters within the public record that are not subject to reasonable dispute without converting a pending motion into a motion for summary judgment).

According to these principles, in considering the Motion to Dismiss, the Court considers, in addition to the Complaint, the statements in Myers's Response and the exhibits attached thereto that are consistent with the allegations in the Complaint.

## IV. ANALYSIS

Judge Bennett argues that Myers fails to allege facts sufficient to state a claim for relief. Judge Bennett further argues that he is protected by the judicial immunity doctrine because the alleged misconduct occurred while he performed a judicial function within his jurisdiction.

A. Judicial immunity protects Judge Bennett from civil liability.

Absolute judicial immunity protects "[a]cts carried out in a judicial capacity, whether based on statute, rule or inherent authority." Thompson v. Duke, 882 F.2d 1180, 1184 (7th Cir. 1989). Judicial immunity exists to preserve judicial independence in the decision-making process. Stump v. Sparkman, 435 U.S. 349, 363 (1978) (citing Bradley v. Fisher, 80 U.S. 335, 347 (1871)). To support this policy, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Id. at 356. Accordingly, the protection applies even if the judge acted maliciously, made a grave error, or exceeded his authority. Stump, 435 U.S. at 359; Mireles v. Waco, 502 U.S. 9, 12-13 (1991) ("If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority."); Newman v. State of Ind., 129 F.3d 937, 941 (7th Cir. 1997). Immunity extends to errors of law or procedure and applies even when a plaintiff alleges that the judge acted with malice, corruption, or bad faith. Mireles, 502 U.S. at 11; Dellenbach v. Letsinger, 889 F.2d 755, 758 (7th Cir. 1989).

Accordingly, for the purpose of determining whether immunity applies, the relevant act is not the specific action of the judge

(which may have involved an error or a transgression of his authority), but the general nature of the act.  Id. at 13 ("[T]he relevant inquiry is the nature and function of the act, not the act itself.  In other words, we look to the particular act's relation to a general function normally performed by a judge . . . .") (citations omitted) (internal quotation marks omitted).  "[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge."  Id. at 12 (internal quotation marks omitted) (judge's order to police officer to use excessive force to bring attorney into court was entitled to immunity because normal judicial function includes directing police officers to bring individuals to court).  Only when a judge acts in the "clear absence of all jurisdiction" is he subject to liability.  Stump, 435 U.S. at 356-57.

A judge's action qualifies for absolute judicial immunity if it meets a two-part test: first, the act "must be within the judge's jurisdiction."  Dellenbach, 889 F.2d at 759.  Second, the act "must be performed in the judge's judicial capacity."  Id.

Section 1983 provides a plaintiff the right to sue for damages resulting from civil rights violations caused by someone who used the color of law in a way that deprived the plaintiff of "any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; Dellenbach, 889 F.2d at 758. However, § 1983 did not abolish the doctrine of judicial immunity. Stump, 435 U.S. at 355. Therefore, judges have a "right to be free from suit for civil damages if their actions qualify for absolute judicial . . . immunity." Dellenbach, 889 F.2d at 758.

1.    Judge Bennett acted within his jurisdiction.

To be protected by immunity, a judge must have acted with subject matter jurisdiction. Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011). That is, the judge must have acted as a judge. Homola v. McNamara, 59 F.3d 647, 651 (7th Cir. 1995).

Judge Bennett had subject matter jurisdiction over the state case. The Stalking No Contact Order Act clearly establishes that circuit courts have the authority to issue stalking no contact orders. 740 ILCS 21/45 (2015). As a judge in the Circuit Court of Shelby County, Illinois, Judge Bennett had the authority to preside over and make decisions affecting the state case against Myers.

Although Myers argues that Judge Bennett exceeded subject matter jurisdiction by violating the Illinois Supreme Court Rules on Civil Proceedings in the Trial Court,[3] procedural errors do not remove a judge's power to hear a case. See Dellenbach, 889 F.2d at 760 (finding that circuit court judge retained subject matter jurisdiction in a criminal law matter for an ex parte phone call to an appeals court judge despite the circuit judge's procedural error about his authority once defendant filed appeal). Therefore, Judge Bennett acted with subject matter jurisdiction.

2. Judge Bennett acted within his judicial capacity.

Judge Bennett acted within his judicial capacity, the second element of judicial immunity. Judicial capacity refers to the functional nature of the act. Dellenbach, 889 F.2d at 759. To determine whether the judge acted within his capacity, courts consider the nature of the act itself, i.e. whether it is a function normally performed by a judge, the nature of the parties' interactions with the judge, and the expectations of the parties. Stump, 435 U.S. at 362; Dellenbach, 889 F.2d at 761.

---

[3] The Complaint does not assert the way in which Judge Bennett violated any Illinois Supreme Court Rule of Civil Proceeding in the Trial Court.

### a. Judge Bennett acted within his judicial capacity at the October 1, 2015 hearing.

In presiding over the October 1, 2015 hearing, Judge Bennett acted within his judicial capacity, including when he granted Myers's extension of time to find an attorney and when he extended the stalking no contact order. Presiding over hearings, granting extensions of time to respond to pleadings, and issuing and extending stalking no contact orders are all functions normally performed by a judge in his official capacity. Further, by appearing before Judge Bennett and making requests about the case, the parties dealt with Judge Bennett in his capacity as a judge.

Myers asserts that Judge Bennett acted without judicial capacity because Judge Bennett violated Myers's civil rights and the Illinois Supreme Court Rules of Civil Proceedings in the Trial Court because Judge Bennett had no authority to extend the order of no contact at the October 1 hearing. Even if Judge Bennett erred in extending the order after he continued the hearing to allow Myers to obtain an attorney, judicial immunity still applies. Pierson v. Ray, 386 U.S. 547, 553 (1967) (judge was immune from liability for unconstitutional conviction resulting in civil rights violations).

Judicial decisions that unfairly or wrongly impact a party's property or freedom are protected by immunity if the judge had jurisdiction and acted within his judicial capacity. <u>See</u> <u>Stump</u>, 435 U.S. at 363 (holding that a judge, who granted a mother's request to sterilize her daughter without the daughter's knowledge or consent, was protected by judicial immunity even though the results were unfair to the daughter). Therefore, even if Judge Bennett's decisions at the October 1 hearing violated Myers's rights, that fact does not deprive Judge Bennett of immunity.

      b.    <u>Judicial immunity protects Judge Bennett's alleged October 1 ex parte communication with Beyers and Beyers's attorney</u>.

Judicial immunity protects Judge Bennett's alleged October 1 <u>ex parte</u> communication with Beyers and Beyers's attorney. An <u>ex parte</u> communication is "a generally prohibited communication between counsel and the court when opposing counsel is not present." <u>Sheehy v. Brady's This Is It</u>, No. 2:12 CV 477, 2013 WL 3319684, at *11 (N.D. Ind. 2013). An ex parte communication benefits one party and occurs without notice to or argument by an adverse party. Black's Law Dictionary 597 (7th ed. 1999).

Myers asserts that the conversation immediately after the October 1 hearing among Judge Bennett, Beyers, and Beyers's attorney is an ex parte communication because it occurred without Myers.

Accepting as true that the interaction was an ex parte communication, that fact alone is insufficient to show that Judge Bennett acted outside of his judicial capacity. See Dellenbach, 889 F.2d at 762 ("[T]he ex parte nature of the alleged call . . . does not, without more, transform that communication into a nonjudicial act."). "Courts and judges often act ex parte." Stump, 435 U.S. at 363 n.12 (finding judge acted within his judicial capacity by granting an order in an ex parte proceeding to sterilize petitioner when petitioner was a child). Judicial capacity includes informal and ex parte communications that arise within a judge's jurisdiction. Forrester v. White, 484 U.S. 219, 227 (1988) ("[T]he informal and ex parte nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character.").

Myers does not assert that Judge Bennett issued any orders or made judicial decisions pertaining to the state case after Myers left

the courtroom.  Nor does the Complaint allege any facts to indicate that the communication was administrative, managerial, or otherwise nonjudicial.  <u>See, e.g., id.</u> at 227-228 (courts distinguish "between judicial acts and the administrative, legislative, or executive functions that judges may . . . perform."); <u>Supreme Court of Virginia v. Consumers Union of United States, Inc.</u>, 446 U.S. 719 (1980) (no judicial immunity for promulgating a code of conduct for attorneys); <u>Ex parte Virginia</u>, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1880) (no judicial immunity for discriminating on the basis of race in selecting jurors).  The Complaint merely states that the communication occurred.  The nature of the conversation, which was in the courtroom immediately following a hearing involving the parties and in a matter presided over by Judge Bennett, indicates that Beyers and his attorney were dealing with Judge Bennett in an official capacity.  <u>See</u> <u>Eades</u>, 810 F.2d at 726; <u>Dellenbach</u>, 889 F.2d at 760.  Without additional facts to suggest that the conversation was a nonjudicial act, the allegation of the ex parte communication alone is insufficient to strip Judge Bennett of immunity.  <u>Dellenbach</u>, 889 F.2d at 761-62.

Myers suggests that the ex parte communication violated Rule 63 of the Illinois Supreme Court Rules. Rule 63 establishes that a judge should not allow an ex parte communication except when required for scheduling, administrative purposes, or emergencies that do not concern the substantive issues of the case, but the judge may only allow such ex parte communications when the judge reasonably believes that no party will gain a procedural or tactical advantage as a result and the judge promptly notifies the other parties of the substance of the communication and allows an opportunity to respond. IL Code of Jud. Conduct R. 63(A)(5). However, even if the ex parte communication constituted procedural error or exceeded Judge Bennett's authority, judicial immunity is not overcome. <u>Dellenbach</u>, 889 F.2d at 759; <u>Stump</u>, 435 U.S. at 361; <u>McAlester v. Brown</u>, 469 F.2d 1280, 1282 (5th Cir. 1972) (judge immune from liability for conduct that "may well have violated state and/or federal procedural requirements regarding contempt citations"). Therefore, the alleged ex parte communication following the October 1 hearing is protected by judicial immunity.

c.  Judge Bennett performed or oversaw the alleged
changes to the October 1 hearing transcript in his
judicial capacity.

The alleged changes to the October 1 hearing transcript are
similarly protected by judicial immunity. Judicial immunity applies
to a presiding judge's changes to a trial transcript. "Supervising the
preparation of the record of trial, while a task ordinarily delegated
to the court's officers and counsel, is clearly within the general
responsibility of the court." Dellenbach, 889 F.2d at 761.

In Eades v. Sterlinske, judicial immunity barred a plaintiff's
claim that a judge dictated false alterations to a trial transcript and
docket sheet to reflect a special verdict conference that never
occurred. 810 F.2d 723, 724-25 (7th Cir. 1987). The judge acted
within his judicial capacity because the judge presided over the trial
and post-trial proceedings as part of his normal duties and the
judge's actions involved post-trial proceedings in which the plaintiff
dealt with the judge in the judge's official capacity. Id. at 726.

Like the judge in Eades, Judge Bennett presided over the
hearing as part of his normal judicial duties and had jurisdiction to
do so. Even if Judge Bennett altered the transcript in error or in
excess of his authority, he is not deprived of immunity. Scruggs v.

<u>Moellering</u>, 870 F.2d 376, 377 (7th Cir. 1989) (judicial immunity for judge who allegedly falsified trial transcript because preparation of the record is a judicial act beacuse "[d]etermining the composition of the appellate record entails a number of decisions that require skill and judgment"); <u>Dellenbach</u>, 889 F.2d at 759 ("judicial acts concerning the preparation and ultimate transfer of papers and transcripts to the appellate court qualify as judicial acts for which the grant of absolute immunity is functionally appropriate.").  Judge Bennett acted in his judicial capacity in examining and preparing the transcript.  <u>See</u> <u>id.</u> at 761.

> d.   <u>Judicial immunity protects Judge Bennett's phone conversation with Myers.</u>

Myers further alleges that the June 10, 2016, phone call was an ex parte communication made to "intimidate, threaten, and harass" Myers.  Myers asserts that his attorney was not on the call and that Judge Bennett made the call from a private residence (d/e 13 at 2, 5, 7, 9).

Myers has not established a sufficient basis to overcome judicial immunity.  The fact that Judge Bennett made the call after the hearing whose transcript was the subject of the call does not

indicate that he did not act within his judicial capacity. In Dellenbach, the trial court judge's call to the appellate judge after the case was pending in the appellate court did not strip the trial court judge of immunity because the call was regarding a matter tried in his court and thus the judge did not act "in the clear absence of jurisdiction." 889 F.2d at 760. During the call in this case, Judge Bennett and Myers discussed a case over which Judge Bennett presided and to which Myers was a party. During the course of a case, it is a normal judicial function for a judge to explain or discuss the nature of a judicial decision or hearing with a party. See Talbot v. Connors, No. 15-cv-12393, 2016 WL 369688, at *1 (E.D. Mich., Feb. 1, 2016) (collecting cases). The fact that the phone conversation occurred without Myers's attorney or without opposing counsel did not change the nature of Judge Bennett's conduct.

As for Myers's allegations that the call took place from a private residence, valid judicial acts are often performed outside of the courtroom. Judicial immunity is not defeated merely because the judge performed the act outside of the courtroom, such as in chambers or in his home instead of in the courtroom. Lopez v.

Vanderwater, 620 F.2d 1229, 1234 n.6 (7th Cir. 1980); McAlester, 469 F.2d at 1282.  Placing the call from a private home did not change the nature of Judge Bennett's conduct.

Finally, even if Judge Bennett erred in making the call, such an error, even a grave procedural error, does not preclude immunity.  Dellenbach, 889 F.2d at 759.  Although Judge Bennett also presided over a separate pending case involving Myers, nothing in the Complaint suggests that the phone call implicated the separate case.

Judge Bennett acted within his jurisdiction and judicial capacity at all relevant times and throughout the actions alleged in the Complaint.  Therefore, Judge Bennett is protected from liability by judicial immunity for all of Myers's claims.

Because Judge Bennett is protected from liability by judicial immunity, the Court need not address Judge Bennett's alternative argument for dismissal that the Complaint does not state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## V.  CONCLUSION

For the reasons stated herein, Judge Bennett's Motion to

Dismiss (d/e [9]) is GRANTED.  The Complaint (d/e 1) is

DISMISSED WITH PREJUDICE.  CASE CLOSED.

**ENTER:  October 4, 2017**

**FOR THE COURT:**

**<u>s/ Sue E. Myerscough</u>**
**SUE E. MYERSCOUGH**
**U.S. DISTRICT JUDGE**
